Hatfield, Judge,
delivered the opinion of the court:
This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting all of the claims, Nos. 17 to 24, inclusive, in appellant’s application for a patent for an alleged invention relating to a food product and a method of preparing it.
Claims 17, 18, 19, 23, and 24 are product claims. Claims 20, 21, and 22 are process claims.
Claims 17, 18, and 21 are representative of the appealed claims. They read:
17. A fruit composition comprising a fresh fruit material and a readily blend-able and compatible added sweetening medium derived from fruit and having substantially the same sugar composition as fruit and containing inert non-sugar constituents of fruit, said sweetening medium being of such blendability and compatibility with respect to the fruit material that it enters into immediate osmotic equilibrium with the fruit material thus to preserve the original appearance of the latter over long periods of time.
18. A fruit composition comprising fresh fruit harvested before it is ripe and a readily blendable and compatible added sweetening medium derived from fruit and having substantially the same sugar composition as fruit and containing inert non-sugar constituents of fruit, said sweetening medium being of such blenda-bility and compatibility with respect to the fruit that it enters into immediate osmotic equilibrium with the fruit thus to preserve the original appearance of the latter over long periods of time, the quantity of said sweetening medium being present at least sufficient to give said fruit the ripe, sweet taste of fruit ripened before harvesting.
21. A method of preparing fruit compositions which comprises adding to fresh fruit harvested before it is ripe at least a sufficient quantity of a readily blendable and compatible sweetening medium to give the fruit material the ripe, sweet taste of fruit ripened before harvesting, said sweetening medium being derived from fruit and having substantially the same sugar composition as fruit, containing inert, non-sugar constituents of fruit, and being of such blendability and compatibility with respect to the fruit that it enters into immediate osmotic equilibrium with the fruit thus to preserve the original appearance of the latter over long periods of time.
*736 The ref erences are:
Alexandrian, 772,018, October 11, 1904.
Negrete, 1,243,964, October 23,1917.
Fritz-Williams, 1,402,347, January 3, 1922.
Hunt, “Honey and its Uses in the Home”, 1922, pp. 24-25.
Oruess, “Commercial Fruits and Vegetable Products”, 1924, pp. 66-67-263.
Nicbols, 1,550,321, August 18, 1925.
Barlow, 1,717,489, June 18,1929.
Wickenden, 1,906,295, May 2, 1933.
Appellant’s application relates to the preparation and preserving <of fruits, and especially to the sirups used in such processes. It has been the conventional practice to employ sirups made from cane or beet sugars which, as stated in appellant’s brief, are composed essentially of sucrose which, in turn, is made up of fructose (levulose) and glucose (dextrose). Sucrose, upon hydrolysis, yields equal quantities of dextrose and levulose. The mixture of levulose and dextrose resulting from the hydrolysis of sucrose is known as invert sugar. See Hackh’s Chemical Dictionary, 1929, pp. 314, 332 and 387.. The sugar found in fruits, as pointed out in appellant’s brief, differs materially from cane and beet sugars, as regards the amounts of dextrose and levulose present. Accordingly, the addition of cane or beet sugar to fruit may cause a considerable interchange of sugars in solution before osmotic equilibrium is reached, and such interchange may adversely affect the fruit being treated.
Appellant avoids the afore-mentioned condition and secures other advantages by using, instead of cane or beet sugar, a sweetening medium derived from fruit juice by treating the juice with chemicals which remove the acids and ash forming materials, thus producing a sirup which is sweeter than the juice itself and which has a sugar content conforming in character to that of the fruit to be treated. As a further application of appellant’s idea, such a sweetening medium may be applied to unripe fruit, in which case it supplies the sugars which would be produced in the normal ripening of the fruit, thus duplicating the flavor of tree-ripened fruit.
The patent to Barlow, which is the reference principally relied on in support of the rejection of the appeal claims, discloses a process of treating dried fruit by soaking it in the juice of another fruit and drying it again. In the preferred example, dried prunes are soaked iff lemon juice, but the patentee states that:
Any fleshy fruit wbicb on pressure yields a desirable juice may be used to furnish the fruit juice. Agreeable combinations will usually result on combining fruits of opposite or unlike qualities, as the highly flavored with the insipid and the sour with the sweet.
*737 So far as ,we are here concerned, the quoted language fairly contemplates the addition of a relatively sweet fruit juice to a relatively sour fruit.
The remaining references disclose the use of various sweetening media such as honey, sucrose, and invert sugar in the preparation of ripe and unripe fruits. They do not show the use of a sweetening medium prepared from fruit juice.
The principal ground of rejection relied on by both the Primary Examiner and the Board of Appeals is stated as follows by the examiner:
The addition of sweetening mediums to fresh fruit and unripe fruit being shown by Cruess, Wickenden, Hunt and Alexandrian, respectively, it is held obvious and uninventive to add a natural juice to fresh or unripe fruit in view of Barlow who shows the similar addition of natural fruit juice to dried .fruit. [Italics quoted.]
It was evidently the position of the Patent Office tribunals that a natural fruit juice could be considered a sweetening medium within the meaning of the appealed claims. Counsel for appellant disagree with this position and point out that appellant’s specification defines a sweetening medium as one which is substantially free from materials which detract from its sweetening power. [1] It is well settled, however, that the claims of a pending application are to be given the broadest interpretation which they will reasonably support and that limitations which are not expressed will not be read into them. In re Carr, 54 App. D C. 283, 297 Fed. 542, and In re Bryson D. Horton, 19 C. C. P. A. (Patents) 871, 54 F. (2d) 961, 12 U. S. Pat. Q. 221. A case directly in point is In re Hegan, 25 C. C. P. A. (Patents) 1182, 97 F. (2d) 86, 37 USPQ 750. In that case, the specification of the application on appeal contained the statement that:
It is to be further understood that the term ‘corrugated wire in strand form’ is intended to denote free .strands of wire as distinguished from strands which are woven or knitted together in screen or like form.
In refusing to read that definition into the expression “corrugated wire in strand form,” appearing in the appealed claims, we said:
Whatever of limitation there may be in this definition, such limitation does not appear in the appealed claims and it is well settled that, while claims are to be read in the light of the specification, limitations not in the claim need not be considered even though the application disclosure would support such limitations. [Italics quoted.]
' In the instant case the term sweetening medium, in the appealed claims, must be given its normal broad interpretation of a medium which will render the substance sweeter to which it is added. It follows that the term does not distinguish over the process of the *738 Barlow patent, in which a juice of one fruit may be added to a dried fruit which is less sweet.
Similarly, the word “syrup” appearing in some of the claims does not distinguish from fruit juice, since one meaning of this word, as •defined by Webster’s New International Dictionary is “* * * any concentrated, more or less viscid aqueous solution of sugar.”
We are of opinion that the position of the examiner and the board that, in view of the patent to Barlow and the other references cited, there would be no invention in adding natural fruit juice to fresh fruit, is sound. Although the patentee Barlow appears to be concerned only with dried frmts, the other references show it to be old to add various flavoring solutions to fresh fruit and, under such circumstances, we are of opinion that the application of fruit juices to fresh fruit, in the manner in which the patentee Barlow applies them to dried fruit, does not involve invention. Sterilizing and packaging the resultant product, as contemplated by claim 19, is a conventional step and is not a matter of invention. Claims 23 and 24 call for the addition of the sirup to a fruit juice and to a “fresh juicy pulp” respectively. Those claims obviously do not involve more than variations of the idea of adding the sirup to the fruit itself. Claims 17, 19, 20, 23, and 24 define nothing more, in our opinion, than obvious modifications of the patentee Barlow’s idea of adding the juice of one fruit to another fruit as a flavoring medium.
For the reasons stated, we are of opinion that appealed claims 17, 19,20,23, and 24 define nothing patentable over the prior art, and that they were properly rejected. Had appellant included in those claims the limitation that acids and ash-forming materials had been eliminated from the sweetening medium, a different issue would have been presented.
Claims 18, 21, and 22 are limited to the treatment of fruit which is harvested before it is ripe, and to the addition of enough of a sweetening medium derived from fruit to supply the sweetness which would normally be acquired in tree-ripening. It is pointed out in appellant’s application that this procedure results in a more natural flavor than can be obtained if the sugar deficiency is supplied by cane, beet, or similar sugars. This specific application of appellant’s idea is not found to be fairly suggested by the prior art and, in view of this fact, and of the advantageous result obtained, we are of opinion that claims 18, 21, and 22 are patentable over the references of record.
For the reasons stated, the decision of the Board of Appeals is modified, being afifirmed as to claims 17,19,20, 23, and 24, and reversed as to claims 18, 21, and 22.